**Scott Oborne, OSB #062333**
obornes@jacksonlewis.com
Jackson Lewis LLP
1001 SW Fifth Avenue, Suite1205
Portland, Oregon  97204
(503) 229-0404
(503) 229-0405 (facsimile)

**Paul DeCamp, VBA #76204 (pro hac vice)**
DeCampP@jacksonlewis.com
Jackson Lewis LLP
10701 Parkridge Boulevard, Suite 300
Reston, Virginia  20191
(703) 483-8300
(703) 483-8301 (facsimile)

**William Robert Donovan, Jr., WSBA #44571 (pro hac vice)**
robert.donovan@jacksonlewis.com
**Peter Nohle, WSBA#35849 (pro hac vice)**
nohlep@jacksonlewis.com
**Nick M. Beermann, WSBA #308603 (pro hac vice)**
beermann@jacksonlewis.com
Jackson Lewis LLP
600 University Street, Suite 2900
Seattle, Washington  98101
(206) 405-0404
(206) 405-4450 (facsimile)

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **OREGON RESTAURANT AND LODGING ASSOCIATION**, et al, <br><br>   Plaintiffs, <br><br>  v. <br><br>**HILDA L. SOLIS**, et al, <br><br>   Defendants. | Case No.: 3:12-cv-01261-HU <br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br>**Request for Oral Argument (LR 7-1(d)(2))** |

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................................1

STATEMENT OF THE CASE............................................................................................2

I.      The 1974 Amendments To Section 3(m)................................................................2

II.     The Ninth Circuit's *Woody Woo* Decision ...........................................................3

III.    The Regulations At Issue.......................................................................................5

        A.      The 2008 Notice Of Proposed Rulemaking...............................................5

        B.      The 2011 Final Rule ..................................................................................5

LEGAL STANDARDS FOR THE CROSS-MOTIONS .................................................7

ARGUMENT.......................................................................................................................7

I.      The 2011 Final Rule Fails Under Step One Of *Chevron* Because It Is
        Contrary To The Plain Language Of Section 3(m) As Well As The Clearly
        Expressed Intent Of Congress................................................................................7

        A.      The 2011 Final Rule Is Contrary To Section 3(m)'s Plain And
                Unambiguous Language, As Recently Construed By The Ninth Circuit
                In *Woody Woo*.............................................................................................8

        B.      The Legislative History Of Section 3(m) Confirms The Clear
                Congressional Intent Not To Restrict Tip Pooling When An Employer
                Takes No Tip Credit..................................................................................12

II.     The 2011 Final Rule Fails Under The *Mead* Standard Because Congress Did
        Not Delegate Authority To DOL To Declare Property Rights, Or To Regulate
        Tip Pools When An Employer Takes No Tip Credit............................................14

        A.      Congress Did Not Leave An Explicit Gap For DOL To Fill Concerning
                The Tip Credit Provision Of Section 3(m)...............................................15

        B.      Congress Did Not Impliedly Delegate Authority To DOL To Issue The
                2011 Final Rule, Let Alone Fill Any "Gaps" ...........................................16

        C.      Even Assuming Arguendo An Implicit Gap, DOL's 2011 Final Rule
                Went Beyond The Scope Of The FLSA And Exceeded The Scope of
                DOL's Authority.......................................................................................17

III.    The 2011 Final Rule Is Invalid Under Step Two of *Chevron* Because It
        Constitutes Arbitrary and Capricious Agency Action..........................................20

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.                          **Jackson Lewis LLP**
& Opp. to Defs.' Mot. to Dismiss                                    1001 SW Fifth Avenue, Suite 1205
Case No. 3:12-cv-01261-HU                          i                     Portland, Oregon  97204
                                                                             503.229.0404

A.    DOL Failed To Consider The Effects Of The 2011 Final Rule On Small Businesses ............................................................................................ 21

B.    DOL Arbitrarily Chose To "Protect" Certain Employees While Disadvantaging Others ............................................................................ 24

IV.    DOL Was Required To Issue A New Notice Of Proposed Rulemaking Before Promulgating The 2011 Final Rule ............................................................ 26

CONCLUSION ................................................................................................ 30

**Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.**
**& Opp. to Defs.' Mot. to Dismiss**
Case No. 3:12-cv-01261-HU                               ii

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Bioscience, Inc. v. Thompson*,
   269 F.3d 1077 (D.C. Cir. 2001) .............................................................................7

*Am. Petroleum Inst. v. EPA*,
   52 F.3d 1113 (D.C. Cir. 1995) ...............................................................................15

*Ariz. Pub. Serv. Co. v. EPA*,
   211 F.3d 1280 (D.C. Cir. 2000) .............................................................................27

*Atl. City Elec. Co. v. Mead*,
   295 F.3d 1 (D.C. Cir. 2002) ............................................................................16, 21

*Barrentine v. Ark.-Best Freight Sys., Inc.*,
   450 U.S. 728 (1981) ...............................................................................................25

*BedRoc Ltd., LLC v. United States*,
   541 U.S. 176 (2004) ...............................................................................................12

*Chamber of Commerce v. NLRB*,
   856 F. Supp 2d 778 (D.S.C. 2012) .........................................................................17

*Chan v. Triple 8 Palace, Inc.*,
   No. 03Civ6048, 2006 U.S. Dist. LEXIS 15780 (S.D.N.Y. Mar. 31, 2006) ...........10

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
   467 U.S. 837 (1984) ....................................................................................... passim

*Christensen v. Harris Cnty.*,
   529 U.S. 576 (2000) ...........................................................................................4, 18

*Chung v. New Silver Palace Rest., Inc.*,
   246 F. Supp. 2d 220 (S.D.N.Y. 2002) ....................................................................10

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001) ...............................................................................................12

*City of Waukesha v. EPA*,
   320 F.3d 228 (D.C. Cir. 2003) ...............................................................................27

*Colo. River Indian Tribes v. Nat'l Indian Gaming Comm'n.*,
   383 F. Supp. 2d 123 (D.D.C. 2005), *aff'd*, 466 F.3d 134 (D.C. Cir. 2006) ...........17

**Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.**
**& Opp. to Defs.' Mot. to Dismiss**
Case No. 3:12-cv-01261-HU                                    iii

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

*Conn. Light & Power Co. v. NRC,*
    673 F.2d 525 (D.C. Cir. 1982) ........................................................................27

*Connecticut Nat'l Bank v. Germain,*
    503 U.S. 249 (1992)............................................................................................8

*Continental Title Co. v. People's Gas Light & Coke Co.,*
    959 F. Supp. 893 (N.D. Ill. 1997) ..................................................................11

*Cooper v. Thomason,*
    No. 06-1018-KI, 2007 U.S. Dist. LEXIS 7097 (D. Or. Jan. 26, 2007)....................19

*Cumbie v. Woody Woo, Inc.,*
    596 F.3d 577 (9th Cir. 2010) ................................................................ passim

*Donovan v. Crisostomo,*
    689 F.2d 869 (9th Cir. 1982) ..........................................................................18

*Envtl. Integrity Project v. EPA,*
    425 F.3d 992 (U.S. App. D.C., 2005) .........................................................27, 29

*Fernandez v. Brock,*
    840 F.2d 622 (9th Cir. 1988) ............................................................................8

*Fertilizer Inst. v. EPA,*
    935 F.2d 1303 (D.D.C. 1991) .....................................................................27, 29

*Garcia v. United States,*
    469 U.S. 70 (1984)..........................................................................................13

*Gonzales v. Oregon,*
    546 U.S. 243 (2006).........................................................................................15

*Greater Yellowstone Coalition v. Bosworth,*
    209 F. Supp. 2d 156 (D.D.C. 2002) ..................................................................7

*Hi-Craft Clothing Co. v. NLRB,*
    660 F.2d 910 (3rd Cir. 1981) ..........................................................................18

*Int'l Union, United Mine Workers of Am. v. MSHA,*
    407 F.3d 1250 (D.C. Cir. 2005)......................................................................27

*Irigoyen-Briones v. Holder,*
    644 F.3d 943 (9th Cir. 2011) ..........................................................................11

*Jama v. ICE,*
    543 U.S. 335 (2005) .......................................................................................17

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU

iv

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon 97204
503.229.0404

*Kooritzky v. Reich*,
    17 F.3d 1509 (D.C. Cir. 1994) ...................................................................27

*Long Island Care at Home, Ltd. v. Coke*,
    551 U.S. 158 (2007) ...............................................................15, 16, 27

*Lopez v. Davis*,
    531 U.S. 230 (2001) ...................................................................12

*Marmolejo-Campos v. Holder*,
    558 F.3d 903 (9th Cir. 2009) (en banc) ...................................................14

*Martin v. Tango's Rest., Inc.*,
    969 F.2d 1319 (1st Cir. 1992) ...............................................................10

*Martinez v. Wells Fargo Home Mortg., Inc.*,
    598 F.3d 549 (9th Cir. 2010) ...............................................................12

*Michigan v. EPA*,
    268 F.3d 1075 (D.C. Cir. 2001) ...................................................15, 17, 20

*Monahan v. Cnty. of Chesterfield, Va.*,
    95 F.3d 1263 (4th Cir. 1996) ...............................................................26

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ...................................................................21, 22

*N. Cal. River Watch v. Wilcox*,
    633 F.3d 766 (9th Cir. 2011) ...............................................................7, 8, 14, 20

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
    545 U.S. 967 (2005) ........................................................... passim

*NE Md. Waste Disposal Auth. v. EPA*,
    358 F.3d 936 (D.C. Cir. 2004) ...............................................................27

*Nijjar v. Holder*,
    689 F.3d 1077 (9th Cir. 2012) ...............................................................12

*NLRB v. Brown*,
    380 U.S. 278 (1965) ...................................................................18

*NLRB v. Ins. Agents' Int'l Union*,
    361 U.S. 477 (1960) ...................................................................20

*Oregon v. Norton*,
    271 F. Supp. 2d 1270 (D. Or. 2003) ...............................................................12

**Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.**
**& Opp. to Defs.' Mot. to Dismiss**
Case No. 3:12-cv-01261-HU       v

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon 97204
503.229.0404

*Pac. Rivers Council v. United States Forest Serv.*,
No. 08-17565, 2012 U.S. App. LEXIS 12553 (9th Cir. June 20, 2012)................................21

*Platek v. Duquesne Club*,
961 F. Supp. 831 (W.D. Pa. 1994)...........................................................................10, 18, 19

*Ratzlaf v. United States*,
510 U.S. 135 (1994)....................................................................................................................4

*Richard v. Marriott Corp.*,
549 F.2d 303 (4th Cir. 1977) ..................................................................................................10

*Royal Foods Co. v. RJR Holdings, Inc.*,
252 F.3d 1102 (9th Cir. 2001) ...................................................................................................8

*Ry. Labor Executives' Ass'n v. NMB*,
29 F.3d 655 (D.C. Cir. 1994) (en banc) .................................................................................15

*S. Offshore Fishing Ass'n v. Daley*,
995 F. Supp. 1411 (M.D. Fla. 1998).......................................................................................22

*Sea-Land Servs., Inc. v. Dep't of Transp.*,
137 F.3d 640 (D.C. Cir. 1998) .................................................................................................17

*Tovar v. U.S. Postal Service*,
3 F.3d 1271 (9th Cir. 1993) .....................................................................................................11

*United States v. Havelock*,
664 F.3d 1284 (9th Cir. 2012) ...................................................................................................8

*United States v. Mead Corp.*,
533 U.S. 218 (2001).....................................................................................................14, 20, 21

*Watkins v. United States Bureau of Customs*,
643 F.3d 1189 (9th Cir. 2011) .................................................................................................21

*Williams v. Jacksonville Terminal Co.*,
315 U.S. 386 (1942)......................................................................................................3, 4, 11, 26

*Zuber v. Allen*,
396 U.S. 168 (1969)..................................................................................................................13

**OTHER CASES**

*Etheridge v. Reins Int'l. Cal., Inc.*,
91 Cal. Rptr. 3d 816 (Cal. Ct. App. 2009) ............................................................................10

**Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.**
**& Opp. to Defs.' Mot. to Dismiss**
Case No. 3:12-cv-01261-HU                          vi

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

**STATUTES**

5 U.S.C. § 553(b)(3) ......................................................................................26

5 U.S.C. §§ 601-612 ......................................................................................21

5 U.S.C. §§ 603-604 ......................................................................................22

5 U.S.C. § 706(2) ............................................................................................7

5 U.S.C. § 706(2)(A) ....................................................................................21

29 U.S.C. § 203(m) ..................................................................................1, 3, 8

29 U.S.C. § 204(a)-(b) ..................................................................................18

29 U.S.C. § 216(c) ........................................................................................18

29 U.S.C. § 217 ..............................................................................................18

29 U.S.C. § 206 ........................................................................................16, 18

29 U.S.C. § 207 ..............................................................................................18

29 U.S.C § 211 ..............................................................................................18

29 U.S.C. § 212 ..............................................................................................18

29 U.S.C. § 206(a) ..........................................................................................2

29 U.S.C. § 207(e)(3) ....................................................................................16

Regulatory Flexibility Act, Pub. L. No. 96-354, 94 Stat. 1164, § 2 (1980).............................21, 22

**REGULATIONS**

29 C.F.R. § 531.52 ......................................................................................6, 19

29 C.F.R. § 531.54 ........................................................................................6, 7

29 C.F.R. § 531.59 ........................................................................................6, 7

29 C.F.R. § 531.60 ..........................................................................................19

32 Fed. Reg. 13,575 (1967) ..........................................................................6, 7

*Updating Regulations Issued Under the Fair Labor Standards Act*, 73 Fed. Reg. 43,654
    (July 28, 2008) ................................................................................. passim

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                              vii

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

*Updating Regulations Issued Under the Fair Labor Standards Act*, 76 Fed. Reg. 18,832
(Apr. 5, 2011) ................................................................................................................ passim

**OTHER AUTHORITIES**

*Brief for the Secretary of Labor as Amicus Curiae in Support of Plaintiff-Appellant*, 2009
U.S. 9th Cir. Briefs LEXIS 773 (submitted in *Cumbie v. Woody Woo)* ................................. 19

S. Rep. No. 95-440 (1977) ................................................................................................................ 24

Sen. Rep. No. 93-690 (1974) ........................................................................................................... 13

**Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss**
Case No. 3:12-cv-01261-HU                            viii                    **Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

## INTRODUCTION

This case boils down to a simple question: after the U.S. Court of Appeals for the Ninth Circuit holds that the plain, unambiguous language of a statute allows an employer to take a particular action, may a federal agency issue regulations depriving the employer of the right to take that action?  Under Supreme Court and Ninth Circuit case law, the answer is obviously no.

In 2010, the Ninth Circuit held that the text of section 3(m) of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 203(m), clearly permits a restaurant to distribute employee tips among all non-managerial employees, including kitchen staff, so long as each worker receives at least the full federal minimum wage separate and apart from any tips.  *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577 (9th Cir. 2010).  In 2011, the U.S. Department of Labor ("DOL") issued regulations expressly disagreeing with *Woody Woo* and purporting to bar employers from requiring tipped employees to share tips with non-tipped employees.  In 2012, DOL announced its intent to enforce these regulations within the Ninth Circuit.  This lawsuit followed.

Defendants make two arguments in support of the regulations: (1) that Congress intended section 3(m) to confer an absolute right for tipped employees to retain all tips, except when sharing tips with other tipped employees; and (2) that section 3(m) leaves a gap that DOL permissibly filled.  In making these arguments, Defendants whistle past the graveyard, as the Ninth Circuit squarely addressed and rejected both propositions in *Woody Woo*.  It is quite telling that Defendants studiously avoid any meaningful discussion of *Woody Woo* in their moving papers despite the prominence of that controlling precedent in the Complaint.

The challenged portions of the 2011 regulations are contrary to the FLSA, are an abuse of discretion, exceed DOL's statutory authority, and are arbitrary and capricious.  Moreover, the regulations are procedurally defective due to a failure to provide for proper notice and comment.  All parties agree that the issues in this litigation are purely legal, do not require discovery or further fact development, and are ripe for this Court's final ruling on the merits.  Plaintiffs are thus entitled to summary judgment, and Defendants' Motion to Dismiss should be denied.

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                                1

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

## STATEMENT OF THE CASE

Except as set forth herein, Plaintiffs adopt Part II of the Memorandum in Support of Defendants' Motion to Dismiss ("Statutory and Regulatory Background"). Defendants, however, omit certain points vital to a proper understanding of the dispute.

### I.  THE 1974 AMENDMENTS TO SECTION 3(M)

Section 6(a) of the FLSA, 29 U.S.C. § 206(a), sets forth the general federal requirement that workers receive the minimum wage rate (currently $7.25 per hour). Section 3(m), which defines the term "wage" under the statute, allows for certain credits, including a partial credit for tips, to meet the minimum wage rate specified under section 6(a)(1). This so-called "tip credit" allows employers under certain circumstances to pay a tipped employee wages below the minimum wage rate so long as the wages plus the employee's tips at least equal the minimum wage rate. The 1966 FLSA amendments modified section 3(m) to create this so-called "tip credit" concept, and the 1974 amendments added certain new conditions in order for an employer to be able to use the tip credit. Subsequent amendments have increased the amount of the tip credit an employer may take, but otherwise the wording of section 3(m) has remained essentially the same since 1974.

The pertinent portion of section 3(m), amounting to three sentences, currently states:

In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—

(1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and

(2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 6(a)(1).

The additional amount on account of tips may not exceed the value of the tips actually received by an employee. *The preceding two sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection*

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                                   2

Jackson Lewis LLP
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

*shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.*

29 U.S.C. § 203(m) (emphasis added).

## II.    THE NINTH CIRCUIT'S *WOODY WOO* DECISION

A waitress sued an Oregon restaurant, alleging that its mandatory tip pool violated the FLSA by requiring servers to contribute all tips to a tip pool that included back-of-house employees (e.g., cooks and dishwashers). The district court granted the restaurant's motion to dismiss based on the plain language of section 3(m), and the plaintiffs appealed. The Ninth Circuit affirmed the dismissal. *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577 (9th Cir. 2010).

The Ninth Circuit began its analysis by "paus[ing] to elucidate a background principle that guides our inquiry: 'In businesses where tipping is customary, the tips, *in the absence of an explicit contrary understanding*, belong to the recipient. Where, however, [such] an arrangement is made . . . , *in the absence of statutory interference, no reason is perceived for its invalidity*.'" *Woody Woo*, 596 F.3d at 579 (quoting *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 397 (1942)). In response to references by the parties and amici (including DOL) to the FLSA's regulations then in effect, the court stated: "[B]ecause we conclude that the meaning of the FLSA's tip credit provision is clear, we need not decide whether these regulations are still valid and what level of deference they merit." 596 F.3d at 579 n.6.

The court then analyzed the same three sentences from section 3(m) set forth above, "unpack[ing] this dense statutory language sentence by sentence." *Id.* at 580. Addressing Cumbie's argument that "an employee must be allowed to retain all of her tips—except in the case of a 'valid' tip pool involving only customarily tipped employees—regardless of whether her employer claims a tip credit", the court concluded: "[W]e cannot reconcile this interpretation with the plain text of the third sentence, which imposes *conditions* on taking a tip credit and does not state freestanding *requirements* pertaining to all tipped employees." *Id.* at 580-81. The court continued: "A statute that provides that a person must do *X in order to achieve Y*, does not mandate that a person must do *X*, period." *Id.* at 581. The court observed that "[i]f Congress

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                                    3

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

wanted to articulate a general principle that tips are the property of the employee absent a 'valid' tip pool, it could have done so without reference to the tip credit." *Id.* Noting the obligation to give every portion of a statute effect, the court "decline[d] to read the third sentence in such a way as to render its reference to the tip credit, as well as its conditional language and structure, superfluous." *Id.* The Ninth Circuit also rejected the "extensive[]" reliance by Cumbie and her amici on the legislative history of the 1974 amendments to support their argument that section 3(m)'s "tip-credit conditions were intended to be freestanding requirements", stating: "Of course, 'we do not resort to legislative history to cloud a statutory text that is clear.'" *Id.* at 581 n.11 (quoting *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994)).

The Ninth Circuit then turned to Cumbie's alternative argument that the tip pool amounted to an impermissible wage kick-back. The court noted that section 3(m) "does not alter the default rule in *Williams* that tips belong to the servers to whom they are given only 'in the absence of an explicit contrary understanding' that is not otherwise prohibited." 596 F.3d at 582 (quoting *Williams*, 315 U.S. at 397). The court determined that "whether a server owns her tips depends on whether there existed an agreement to redistribute her tips that was not barred by the FLSA." 596 F.3d at 582. The court held that "such an agreement existed by virtue of the tippooling arrangement. The FLSA does not restrict tip pooling when no tip credit is taken." *Id.* Thus, "only the tips redistributed to Cumbie from the tip pool ever belonged to her, and her contributions to the pool did not, and could not, reduce her wages below the statutory minimum. We reject Cumbie and the Secretary's interpretation of the [kick-back] regulation as plainly erroneous and unworthy of any deference . . . ." *Id.*

The court then reiterated its determination that the language of the statute is "plain". 596 F.3d at 582. As the court noted, "[t]he Supreme Court has made it clear that an employment practice does not violate the FLSA unless the FLSA *prohibits* it." *Id.* at 583 (quoting *Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000)). The court, "[h]aving concluded that

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU

4

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

nothing in the text of the FLSA purports to restrict employee tip-pooling arrangements when no tip credit is taken . . . perceive[d] no statutory impediment to [the restaurant's] practice." *Id.*

## III.    THE REGULATIONS AT ISSUE

### A.    The 2008 Notice Of Proposed Rulemaking

In 2008, DOL issued a Notice of Proposed Rulemaking, proposing changes to several DOL regulations interpreting the FLSA. *Updating Regulations Issued Under the Fair Labor Standards Act*, 73 Fed. Reg. 43,654 (July 28, 2008) (the "2008 NPRM"). DOL explained that it was revising regulations to bring them up to date with amendments to the FLSA, as well as court decisions and DOL interpretations of the FLSA. 73 Fed. Reg. at 43,656. In discussing its changes, DOL explained that "Section 3(m) of the FLSA defines the term 'wage' and **includes conditions for taking tip credits**." *Id.* at 43,659 (emphasis added). DOL further explained:

> Section 3(m) provides the only method by which an employer may use tips received by an employee **to satisfy the employer's minimum wage obligation. An employer's *only* options under section 3(m) are to take a credit against the employee's tips of up to the statutory differential, or to pay the entire minimum wage directly** . . . . The proposed rule updates the regulations to . . . **clarify that the availability of the tip credit provided by section 3(m)** requires that all tips received must be paid out to tipped employees in accordance with the 1974 amendments.

*Id.* at 43,660 (emphasis added).

As the above makes clear, in 2008 DOL interpreted section 3(m) as placing *conditions* on the availability of the tip credit. It also is evident from the NPRM that DOL intended to update its 1967 tip credit regulations only to clarify that employers could not use tips to pay an employees' minimum wage in excess of the federal tip credit limit, to comport with the 1974 amendments to section 3(m).

### B.    The 2011 Final Rule

In April 2011, DOL issued regulations purportedly based on the 2008 NPRM. *Updating Regulations Issued Under the Fair Labor Standards Act*, 76 Fed. Reg. 18,832 (Apr. 5, 2011)

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                    5

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

(the "2011 Final Rule").   As DOL explained, "the Department respectfully believes that *Woody Woo* was incorrectly decided," *id.* at 18,841, and that "[t]he Ninth Circuit's 'plain meaning' construction is unsupportable*." Id.* at 18,842.

Therefore, instead of merely updating the regulations to forbid agreements whereby employers use tips to meet their minimum wage obligations beyond what section 3(m) allows, DOL made substantially new changes to the originally-proposed regulations in an attempt to overrule *Woody Woo*.  Specifically, the 2011 Final Rule:

1.  Amended 29 C.F.R. § 531.52 by, among other things, replacing this language:

*In the absence of an agreement to the contrary between the recipient and a third party, a tip becomes the property of the person in recognition of whose service it is presented by the customer.*

with the following language:

*Tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA.  The employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool.*

*Compare* 32 Fed. Reg. 13,575, 13,580 (1967) *with* current version of 29 C.F.R. § 531.52.

2.  Amended 29 C.F.R. § 531.54 by adding:

*[V]alid mandatory tip pools . . . can only include those employees who customarily and regularly receive tips.  However, an employer . . . may not retain any of the employees' tips for any other purpose.*

*Compare* 32 Fed. Reg. 13,575, 13,580 (1967) *with* current version of 29 C.F.R. § 531.54.

3.  Amended 29 C.F.R. § 531.59, in relevant part, by replacing this sentence:

*Under employment agreements requiring tips to be turned over or credited to the employer to be treated by him as part of his gross receipts, it is clear from the legislative history that the employer must pay the employee the full minimum hourly wage, since for all practical purposes the employee is not receiving tip income.*

with the following sentence:

**Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss**
Case No. 3:12-cv-01261-HU                                     6

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

> *With the exception of tips contributed to a valid tip pool as described in § 531.54, the tip credit provisions of section 3(m) also require employers to permit employees to retain all tips received by the employee.*

*Compare* 32 Fed. Reg. 13,575, 13,581 (1967) *with* current version of 29 C.F.R. § 531.59.

It is these quoted portions of the 2011 Final Rule that Plaintiffs now challenge.

## LEGAL STANDARDS FOR THE CROSS-MOTIONS

Except as set forth herein, Plaintiffs adopt Part III of the Memorandum in Support of Defendants' Motion to Dismiss ("Standards"). The parties' cross-motions are subject to this Court's review under the Administrative Procedure Act (the "APA"), 5 U.S.C. § 706(2). Under the APA, a reviewing court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law." *Id.* When a plaintiff prevails in an APA challenge, the normal remedy is vacating the agency action. *See Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001); *Greater Yellowstone Coalition v. Bosworth*, 209 F. Supp. 2d 156, 163 (D.D.C. 2002) ("As a general matter, an agency action that violates the APA must be set aside."). As discussed below, under this framework, the portions of the 2011 Final Rule at issue here must be vacated.

## ARGUMENT

I.   **THE 2011 FINAL RULE FAILS UNDER STEP ONE OF *CHEVRON* BECAUSE IT IS CONTRARY TO THE PLAIN LANGUAGE OF SECTION 3(M) AS WELL AS THE CLEARLY EXPRESSED INTENT OF CONGRESS**

Courts analyze challenges to the validity of a federal regulation under the framework set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and its progeny. *See N. Cal. River Watch v. Wilcox*, 633 F.3d 766 (9th Cir. 2011). As the Ninth Circuit made clear in *Wilcox*, the analysis begins "with the 'familiar two-step procedure' laid out in *Chevron*." *Id.* at 772-73 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 986 (2005)). "At step one, we evaluate whether Congressional intent regarding the

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

meaning of the text in question is clear from the statute's plain language." *Id.* If so, "we must give effect to that meaning." *Id.* The Ninth Circuit's *Woody Woo* decision definitively resolves this issue in Plaintiffs' favor. Both the plain language of section 3(m) and the legislative history of the 1974 FLSA Amendments demonstrate beyond dispute that the 2011 Final Rule is contrary to the FLSA and therefore fails under step one of *Chevron*.

### A. The 2011 Final Rule Is Contrary To Section 3(m)'s Plain And Unambiguous Language, As Recently Construed By The Ninth Circuit In *Woody Woo*

Where statutory language "has a plain and unambiguous meaning with regard to the particular dispute in [a] case," the court need look no further. *Royal Foods Co. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1106 (9th Cir. 2001). "If the intent of Congress is clear, that is the end of the matter." *Chevron*, 467 U.S. at 842. In such instances, no deference is due to the agency's interpretation and the court must "direct the agency to comply with the intent of Congress." *Fernandez v. Brock,* 840 F.2d 622, 631 (9th Cir. 1988). "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *United States v. Havelock*, 664 F.3d 1284, 1289 (9th Cir. 2012). As the Supreme Court has explained, "[I]n interpreting a statute a court should always turn first to one cardinal canon before all others. We have stated time and time again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992) (internal citations omitted). Indeed, "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.*

The applicable language in Section 3(m) states:

> The preceding 2 sentences [setting forth the tip credit] shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m).

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                                          8

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon 97204
503.229.0404

In *Woody Woo*, as set forth at length above, the Ninth Circuit examined this exact language, concluded that it is plain and unambiguous, and rejected the very same interpretation of section 3(m) that DOL later adopted in the 2011 Final Rule. Specifically, the Ninth Circuit noted section 3(m)'s plain language no fewer than four times. The court held that "the plain text of the third sentence [of Section 3(m)] . . . imposes *conditions* on taking a tip credit and does not state freestanding *requirements* pertaining to all tipped employees. A statute that provides that a person must do *X in order to achieve Y* does not mandate that a person must do *X*, period." 596 F.3d at 581. The Ninth Circuit remarked that "we do not resort to legislative history to cloud a statutory text *that is clear*." *Id.* at 581 n.11 (emphasis added, quotation omitted). Leaving no doubt about the matter, the court stated: "we conclude that *the meaning of the FLSA's tip credit provision is clear*". *Id.* at 79 n.6 (emphasis added). Detecting no "ambiguity or an irreconcilable conflict with another statutory provision," the Ninth Circuit refused to "'alter the text [of Section 3(m)] in order to satisfy the policy preferences' of Cumbie and [DOL]." *Id.* at 583 (citations omitted).

*Woody Woo* similarly forecloses DOL's attempt to use the 2011 Final Rule as a vehicle for declaring property rights in tips. Responding to arguments made by the plaintiff in that case as well as by DOL as *amicus curiae*, the Ninth Circuit held that the clear and unambiguous language of section 3(m) does not create property rights, explaining: "If Congress wanted to articulate a general principle that tips are the property of the employee absent a 'valid' tip pool, it could have done so without reference to the tip credit. . . . [W]e decline to read the third sentence in such a way as to render its reference to the tip credit, as well as its conditional language and structure, superfluous." 596 F.3d at 581.

A "court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference" when "the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Brand X* , 545 U.S. at 982, 984. *Woody Woo* obviously meets that standard

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                                            9

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

of clarity, as the Ninth Circuit rejected on the basis of the plain language of section 3(m) the position DOL advocated in that case, and which DOL later embodied in the 2011 Final Rule. Numerous other courts considering the text of section 3(m) have read the statute the same way. *See, e.g.*, *Platek v. Duquesne Club*, 961 F. Supp. 831, 834 (W.D. Pa. 1994) (Section 3(m) "plainly does not apply unless the employer seeks to claim the tip credit. Only if the employer seeks to claim the tip credit and fails to meet the conditions set forth in § 3(m) may the employer violate the provisions of § 3(m)."); *Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977) ("What the Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of 3(m) . . . , you may obtain a 50 percent credit from the receipt of tips toward your obligation to pay the minimum wage. The corollary seems obvious and unavoidable: if the employer does not follow the command of the statute, he gets no credit.").[1]

Although DOL conceded in the preamble to the 2011 Final Rule that *Woody Woo* constituted "[t]he Ninth Circuit's '*plain meaning*' construction [of section 3(m)]", 76 Fed. Reg. at 18,842 (emphasis added), Defendants now seek refuge in the assertion that "plaintiffs cannot point to any language in the *Cumbie* decision that holds that the 1974 amendments 'unambiguously foreclose[] the agency's interpretation . . .'" to meet the *Brand X* standard for

---

[1]    *See also Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1323 (1st Cir. 1992) ("In a legislative compromise, Congress chose to allow employers a partial tip credit if, but only if, certain conditions are met."); *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002) ("Congress gave employers of tipped employees a simple choice: either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage."); *Chan v. Triple 8 Palace, Inc.*, No. 03Civ6048, 2006 U.S. Dist. LEXIS 15780, at *53, 59-60 (S.D.N.Y. Mar. 31, 2006) (plaintiffs could prevail on their claim that Defendants violated the FLSA by taking employees' tips "only if defendants have relied on the tip credit"); *Etheridge v. Reins Int'l. Cal., Inc.*, 91 Cal. Rptr. 3d 816, 829 (Cal. Ct. App. 2009) (in ruling that California law allows employers to mandate tip pooling among all employees who participate in the customer's chain of service, including back-of-house employees such as dishwashers and cooks, and in concluding that "the FLSA provides no guidance in this case," the court explained that "the FLSA . . . apparently has no restriction on tip pooling when the employer is not taking a tip credit. In other words . . . the FLSA permits tip pooling, but restricts it when the employer is taking a tip credit. The FLSA's restrictions on tip pooling have the purpose of rendering a tip credit permissible.").

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                    10

Jackson Lewis LLP
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon 97204
503.229.0404

*stare decisis* "because the Secretary promulgated the challenged rules in final form two years *after* the Ninth Circuit decided *Cumbie*."  Defs.' Mem. in Supp. of Mot. to Dismiss at 13. Defendants' position simply ignores *Woody Woo* and misconstrues the nature of *stare decisis* and the *Brand X* ruling.[2]  As shown above, the Ninth Circuit left absolutely no doubt about the implications of the wording and structure of section 3(m): the FLSA does not in any way restrict an employer's right to have a mandatory tip pool that includes back-of-the-house non-managerial workers so long as the employer pays all employees involved at least the full federal minimum wage without regard to tips and takes no tip credit.

In the same vein, Defendants assert that section 3(m) and *Woody Woo* do not foreclose the 2011 Final Rule because "when Congress enacted the 1974 amendments to FLSA, it did not address whether employers who do not take a tip credit may utilize their employee's tips.  The FLSA is silent on this issue."   Defs.' Mem. in Supp. of Mot. to Dismiss at 13.  Defendants' position, however, disregards the well-established principle that congressional "silence . . . (and consequent negative implication) speaks volumes, clearly manifesting Congress' intent."  *Continental Title Co. v. People's Gas Light & Coke Co.*, 959 F. Supp. 893, 901 (N.D. Ill. 1997).[3]  This is particularly true with respect to the 1974 amendments to section 3(m), where Congress understood that the Supreme Court had already ruled that private agreements between employers and employees with respect to the allocation and distribution of tips are lawful.  *See Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 397 (1942).[4]

---

[2]    For the same reason, Defendants' similar argument that *Irigoyen-Briones v. Holder*, 644 F.3d 943 (9th Cir. 2011), does not apply in this case also falls wide of the mark.  See Defs.'s Mem. in Supp. of Mot. to Dismiss at 15-16, n.9.

[3]    As discussed *infra* at SectionI(B), DOL's position also disregards relevant legislative history further showing that Congress did address employers who do not take a tip credit when it amended the FLSA in 1974.

[4]    The cases Defendants cite offer them no help, and if anything they underscore the invalidity of the 2011 Final Rule.  For example, in *Tovar v. U.S. Postal Service*, 3 F.3d 1271, 1276 (9th Cir. 1993), the court expressly recognized that its analysis did **not** fit within the

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU

11

Jackson Lewis LLP
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

Thus, the language of section 3(m), as construed by the Ninth Circuit and other courts, is clear and unambiguous, and it precludes what DOL tried to accomplish in the 2011 Final Rule. When DOL briefed these issues before the Ninth Circuit in *Woody Woo*, the court concluded that DOL's interpretation of section 3(m)'s tip credit provision is "plainly erroneous and unworthy of any deference." *Woody Woo*, 596 F.3d at 582. Nothing in section 3(m) has changed in the meantime, and the 2011 Final Rule is thus invalid pursuant to controlling Ninth Circuit law.

**B.    The Legislative History Of Section 3(m) Confirms The Clear Congressional Intent Not To Restrict Tip Pooling When An Employer Takes No Tip Credit**

Where, as here, a statute is not ambiguous or its meaning is discernable in light of canons of construction, a court should not resort to examining legislative history. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 117-18 (2001); *see also BedRoc Ltd., LLC v. United States,* 541 U.S. 176, 186 (2004) (a court has no occasion to resort to legislative history absent a statutory ambiguity). Given the unambiguous language of section 3(m), it is not necessary to resort to legislative history. *See Woody Woo*, 596 F.3d at 581 n.11. Nonetheless, to address Defendants' "gap filling" argument, to further counter DOL's incorrect assertion that Congress did not address whether employers who do not take a tip credit may utilize tips for tip pools that include non-tipped employees, and to establish without question that Plaintiffs have not "misstated the

---

*Chevron* framework and, regardless, concerned an express grant of agency authority to regulate the subject matter at issue. Likewise, in *Lopez v. Davis*, 531 U.S. 230, 242 (2001), the Court was confronted with the wholly unremarkable issue of whether the permissive statutory language "may" should have a different meaning from the mandatory statutory language "shall." Indeed, in *Lopez* there was no real need to engage in the first step of the *Chevron* analysis, as the statute at issue expressly stated: "the period a [federal] prisoner convicted of a nonviolent offense remains in custody after successfully completing a [substance abuse] treatment program may be reduced by the Bureau of Prisons[.]" *See also Nijjar v. Holder*, 689 F.3d 1077, 1084-85 (9th Cir. 2012) (canons of construction, including specifically *expressio unius est exclusio alterius*, must be considered by a court in assessing statutory language in the context of the first step of *Chevron*); *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 553-54 (9th Cir. 2010) (refusing to go beyond first step of *Chevron*, stating "The language . . . prohibits only the practice of giving or accepting money where no service whatsoever is performed in exchange for that money . . . [b]y negative implication, Section 8(b) cannot be read to prohibit charging fees, excessive or otherwise, when those fees are for services that were actually performed."); *Oregon v. Norton*, 271 F. Supp. 2d 1270, 1275 (D. Or. 2003) (acknowledging that as part of the first step of *Chevron*, a court must consider relevant canons of construction).

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                                    12

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

significance of the legislative history" (Defs.' Mem. in Supp. of Mot. to Dismiss at 20),
Plaintiffs will briefly discuss section 3(m)'s legislative history.

The "authoritative source for finding the Legislature's intent lies in the Committee
Reports on the bill, which represent the considered and collective understanding of those
Congressmen involved in drafting and studying proposed legislation." *Garcia v. United States,*
469 U.S. 70, 76 (1984) (quoting *Zuber v. Allen*, 396 U.S. 168, 186 (1969)).  The Committee
Reports on the bills amending section 3(m) clearly show Congress's intent that the language
limiting tip pools to "employees who customarily and regularly receive tips" applies only when
the employer takes the tip credit.

The sole piece of legislative history that Defendants cling to as support for their position
regarding Congress's intent consists of two pages in a Senate Report from the Committee on
Labor and Public Welfare submitted with the 1974 Amendments.  *See* Defs.' Mem. in Supp. of
Mot. to Dismiss at 5-6.  That report, however, confirms Plaintiffs' position that Congress did not
intend to limit absolutely an employer's ability to implement a tip pool that includes non-tipped
employees; rather, Congress intended only to give employers a choice: to take the tip credit and
to limit tip pooling to tipped employees, or to broaden the tip pool and to forego the tip credit.
Specifically, the report states:

> The tip provision applies on an individual employee basis, and the employer may
> thus claim the tip credit for some employees even though the employer does not
> meet the requirements of this section with respect to other employees.  Nor is the
> requirement that the tipped employee retain such employee's own tips intended to
> discourage the practice of pooling, splitting or sharing tips with employees who
> customarily and regularly receive tips—*e.g.*, waiters, bellhops, waitresses,
> countermen, busboys, service bartenders, etc.  *On the other hand, the employer
> will lose the benefit of this exception if tipped employees are required to share
> their tips with employees who do not customarily and regularly receive tips—e.g.,
> janitors, dishwashers, chefs, laundry room attendants, etc. . . . .*

Sen. Rep. No. 93-690, at 43 (1974) (emphasis added) (the relevant pages of the report appear at
pages 3 and 4 of the Administrative Record).

**Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss**
Case No. 3:12-cv-01261-HU                                                    13

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

The foregoing legislative history could not be clearer, and is fully consistent with the plain language of the present statute. Congress did not intend for the FLSA to restrict tip pooling when no tip credit is taken by an employer. Congress spoke directly on this point. The only consequence to the employer of implementing a tip pool that includes employees who do not customarily and regularly receive tips is that the employer loses the ability to take the tip credit for the employees participating in that tip pool. Congress considered the very issue DOL aims to address in the 2011 Final Rule, but it resolved the matter in a way that is wholly inconsistent with Defendants' position.

DOL must give effect to the unambiguously expressed intent of Congress. *Chevron,* 467 U.S. at 842. By enacting the 2011 Final Rule and trying to regulate tip pools outside of the context of a tip credit, DOL has acted contrary to congressional intent. This Court should therefore declare the 2011 Final Rule unenforceable as a matter of law.

II.    **THE 2011 FINAL RULE FAILS UNDER THE *MEAD* STANDARD BECAUSE CONGRESS DID NOT DELEGATE AUTHORITY TO DOL TO DECLARE PROPERTY RIGHTS OR TO REGULATE TIP POOLS WHEN AN EMPLOYER TAKES NO TIP CREDIT**

Even if this Court determines that the 2011 Final Rule survives *Chevron* step one, the regulations still must fail, as they are beyond the scope of DOL's authority. "If the statute is ambiguous, and an agency purports to interpret the ambiguity, prior to moving on to [Chevron] step two, we must determine whether the agency meets the requirements set forth in *Mead*", which are "(1) that Congress clearly delegated authority to the agency to make rules carrying the force of law, and (2) that the agency interpretation was promulgated in the exercise of that authority." *Wilcox*, 633 F.3d at 772-73 (citing *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001); *Marmolejo-Campos v. Holder*, 558 F.3d 903, 908 (9th Cir. 2009) (en banc)).

Defendants contend that DOL had the authority to issue the 2011 Final Rule because "Congress did not preclude the Secretary from promulgating a rule that prevents employers who do not use the tip credit from subsidizing their entire minimum wage obligation using their employees' tips." Defs.' Mem. in Supp. of Mot. to Dismiss at 12. Defendants, therefore,

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                    14

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

suggest that DOL has authority to act unless Congress expressly precludes the specific action in question. The inverse is true: DOL does **not** have authority to act unless Congress grants it authority to do so.

As a federal administrative agency, DOL is a "creature of statute," and has "no constitutional or common law existence or authority, but *only* those authorities conferred upon it by Congress." *Michigan v. EPA*, 268 F.3d 1075, 1081 (D.C. Cir. 2001) (emphasis added). Without statutory authorization, an agency's "action is plainly contrary to law and cannot stand." *Michigan*, 268 F.3d at 1081. Accordingly, to suggest "that *Chevron* step two is implicated any time a statute does not expressly *negate* the existence of a claimed administrative power (*i.e.*, when the statute is not written in 'thou shalt not' terms), is both flatly unfaithful to the principles of administrative law . . . , and refuted by precedent." *Ry. Labor Executives' Ass'n v. NMB*, 29 F.3d 655, 671 (D.C. Cir. 1994) (en banc). *See also Am. Petroleum Inst. v. EPA,* 52 F.3d 1113, 1120 (D.C. Cir. 1995) ("We will not presume a delegation of power based solely on the fact that there is not an express withholding of such power.").

The Supreme Court has explained that DOL's authority under the FLSA includes "the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 165 (2007) (citations omitted). Congress has left no explicit or implicit gap for DOL regarding section 3(m). Even if Congress did leave such a gap, the 2011 Final Rule is beyond the scope of the FLSA, is not necessary to implement the FLSA and, therefore, is beyond DOL's authority.

## A.    Congress Did Not Leave An Explicit Gap For DOL To Fill Concerning The Tip Credit Provision Of Section 3(m)

"The starting point for [determining the scope of an agency's rulemaking authority is], of course, the language of the delegation provision itself." *Gonzales v. Oregon,* 546 U.S. 243, 259 (2006). A review of the FLSA and, in particular, section 3(m), demonstrates that Congress did not leave an explicit gap for DOL to fill concerning the tip credit provision of section

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                          15

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

3(m). Explicit gaps are found where Congress directs DOL in the statute itself to take a certain action. For example, in *Coke*, an explicit gap was found in a statutory provision that included the phrase "as such terms are defined and delimited by regulations of the Secretary". 551 U.S. at 161, 165.[5]

Section 3(m)'s tip credit provision plainly does not contain any such direction by Congress and, accordingly, does not contain an explicit gap. Defendants apparently concede this point, instead looking to Pub. L. 93-259, § 29(B), 88 Stat. 55, as a potential source of authority to take the action challenged here. *See* Defs.' Mem. in Supp. of Mot. to Dismiss at 6, 13, 16 n.10. However, contrary to Defendants' assertion, the general grant of authority to DOL in that section does not grant it the authority to interpret section 3(m)'s tip pooling language generally, let alone in a manner that goes beyond the scope of the FLSA itself.

### B.    Congress Did Not Impliedly Delegate Authority To DOL To Issue The 2011 Final Rule, Let Alone Fill any "Gaps"

Defendants spend much of their argument in their Motion to Dismiss explaining that DOL is simply "gap filling" the "silence" left by Congress. Courts have cautioned that implied "agency authority may not be lightly presumed. Were courts to *presume* a delegation of power absent an express *withholding* of such power, agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron*, [*Mead*], and quite likely with the Constitution as well. Thus, we will not presume a delegation of power based solely on the fact that there is not an express withholding of such power." *Atl. City Elec. Co. v. Mead*, 295 F.3d 1,

---

[5]    The FLSA is replete with examples of Congress directing DOL in this manner to take certain action. *See, e.g.*, 29 U.S.C. § 206 (setting forth the minimum wage requirements and explaining that, for some employees, that amount is "not less than the minimum piece rate *prescribed by regulation or order*"); 29 U.S.C. § 207(e)(3) (excluding items from the regular rate for overtime purposes, including "payments . . . made pursuant to [certain plans and trusts], *meeting the requirements of the Administrator set forth in appropriate regulations which he shall issue*") (emphasis added). Even the first provision of section 3(m) contains an express delegation of authority to DOL, stating: "'Wage' paid to any employee includes the reasonable cost, *as determined by the Administrator*, to the employer of furnishing such employee with board, lodging, or other facilities . . . ."

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                           16

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

8 (D.C. Cir. 2002) (quoting *Michigan*, 268 F.3d at 1082). Moreover, "[m]ere ambiguity in a statute is not evidence of congressional delegation of authority." *Michigan*, 268 F.3d at 1082 (citing *Sea-Land Servs., Inc. v. Dep't of Transp.*, 137 F.3d 640, 645 (D.C. Cir. 1998)). "We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply . . . ." *Jama v. ICE*, 543 U.S. 335, 341 (2005).

For all the same reasons discussed in detail in Part I above, Congress was not silent, but instead very clear on the subject. There is no plausible inference from either the text or the legislative history of section 3(m) that Congress would have intended for DOL to issue regulations at cross-purposes with Congress's intended consequence of an employer's decision to implement a tip pool that does not meet the conditions set forth in section 3(m)—i.e., unavailability of the tip credit.

### C.    Even Assuming Arguendo An Implicit Gap, DOL's 2011 Final Rule Went Beyond The Scope Of The FLSA And Exceeded The Scope Of DOL's Authority

As noted above, Defendants rely on Pub. L. 93-259, § 29(B), 88 Stat. 55 in support of DOL's authority to issue the 2011 Final Rule. That provision of the 1974 amendments to the FLSA provides that the "Secretary of Labor is authorized to prescribe necessary rules, regulations, and orders with regard to the amendments made by this Act." Even assuming arguendo the existence of some degree of authority for DOL to regulate with respect to section 3(m)'s tip credit provision, the regulations still must tie directly to the statute. *See, e.g.*, *Chamber of Commerce v. NLRB*, 856 F. Supp 2d 778, 785-86 (D.S.C. 2012) ("Agency action 'is always subject to check by the terms of the legislation that authorized it; and if that authority is exceeded it is open to judicial review as well as the power of Congress to modify or revoke the authority entirely.'" (citations omitted)). An agency's general rulemaking authority does not mean that the specific rule the agency promulgates is a valid exercise of that authority. *Colo. River Indian Tribes v. Nat'l Indian Gaming Comm'n.*, 383 F. Supp 2d 123, 143-44 (D.D.C. 2005), *aff'd*, 466 F.3d 134 (D.C. Cir. 2006). "At times, 'more intense scrutiny' of agency

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                    17

Jackson Lewis LLP
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

action is appropriate, such as where 'the agency interprets its own authority,' due to 'the unspoken premise that government agencies have a tendency to swell, not shrink, and are likely to have an expansive view of their mission." *Hi-Craft Clothing Co. v. NLRB,* 660 F.2d 910, 916 (3rd Cir. 1981); *see also NLRB v. Brown,* 380 U.S. 278, 291 (1965) ("Reviewing courts are not obliged to stand aside and rubberstamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate . . . .").

The FLSA is limited in scope to establishing minimum wage and overtime pay requirements, limiting child labor, and creating record-keeping requirements related to these substantive concerns.  29 U.S.C. §§ 206, 207, 211, 212.  It is not intended to create property rights, or to interfere with agreements concerning the use of tips outside the context of the tip credit.  Indeed, unlike the wage payment laws enacted by several states, the FLSA does not regulate other aspects of employee compensation outside the four areas listed above.  *See, e.g.*, *Platek v. Duquesne Club*, 961 F. Supp. 835, 837 (W.D. Pa. 1995), *aff'd without op.*, 107 F.3d 863 (3d Cir. 1997) ("[T]he FLSA was designed to place a floor under wages and a ceiling over hours of employment. . . .  The substantive sections of the FLSA, narrowly focused on minimum wage rates and maximum working hours, bear out its purposes.") (internal quotations and citations omitted).  Given the FLSA's limited scope, "[t]he Supreme Court has made it clear that an employment practice does not violate the FLSA unless the FLSA *prohibits* it."  *Woody Woo,* 596 F.3d at 583 (citing *Christensen*, 529 U.S. at 588).

DOL's authority likewise is limited to addressing issues within the scope of the FLSA's coverage.  Specifically, the FLSA authorizes DOL to regulate minimum wage (29 U.S.C. § 206), overtime (§ 207), wage-related recordkeeping (§ 211), and child labor (§§ 212 & 213(c)).  *See 29 U.S.C. §§ 204(a)-(b), 216(c), 217.  See also Donovan v. Crisostomo*, 689 F.2d 869, 872 n.3 (9th Cir. 1982) ("Section 16(c) of the FLSA authorizes the Secretary only to seek unpaid minimum wages or overtime compensation.").  DOL has admitted as much.  *See* 76 Fed. Reg. at 18,842

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                                    18

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

("the Department only has authority under the FLSA to enforce, *inter alia*, the minimum wage provisions of the Act").

DOL defines a tip as "a sum presented by a customer as a gift or gratuity in recognition of some service performed for him." 29 C.F.R. § 531.52. As such, DOL has acknowledged that *tips are not wages* beyond the extent to which the employer takes a tip credit. *See, e.g.*, 29 C.F.R. § 531.60 ("Any tips received by the employee in excess of the tip credit need not be included in the regular rate. *Such tips are not payments made by the employer to the employee as remuneration for employment within the meaning of the Act.*") (emphasis added)). *See also Cooper v. Thomason,* No. 06-1018-KI, 2007 U.S. Dist. LEXIS 7097, at *5 (D. Or. Jan. 26, 2007) ("Wages and tips are distinguished under the wage and hour statutes.").

As tips are not wages beyond a tip credit, DOL likewise has no authority to regulate tips beyond the tip credit. DOL itself has admitted that "the Secretary's ability to enforce section 3(m) is limited to instances where violations result in minimum wage or overtime violations." *Brief \for the Secretary of Labor as Amicus Curiae in Support of Plaintiff-Appellant*, 2009 U.S. 9th Cir. Briefs LEXIS 773 at *30 (submitted in *Cumbie v. Woody Woo, Inc.,* 596 F.3d 577 (9th Cir. 2010)) (citations omitted). This again comports with the Ninth Circuit's holding in *Woody Woo* that the minimum wage is not implicated when an employer who does not take a tip credit implements a tip pool including non-tipped employees pursuant to an agreement with the employees. 596 F.3d at 581.[6]

---

[6]    Moreover, because tips are not wages, DOL's argument that tip pools of the nature expressly permitted under *Woody Woo* are unlawful because they constitute "an illegal deduction from the tipped employee's wages" also fails. Defs.' Mem. in Supp. of Mot. to Dismiss at 16 n.11.  Once again, this argument was fully briefed to the Ninth Circuit in *Woody Woo*, and the Court expressly rejected it.  "We reject Cumbie and the Secretary's interpretation of the [kick-back] regulation as plainly erroneous and unworthy of any deference . . . ."  596 F.3d at 582. *Accord Platek*, 961 F. Supp. at 838 ("Because the plain language of the free and clear regulation only prevents the kick-back of *wages,* the prohibition simply does not apply to tips.").

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                                                                19

Jackson Lewis LLP
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

Thus, DOL's attempts to declare property rights and to regulate tips outside of the tip credit are well outside the limited scope of the FLSA and, likewise, beyond DOL's authority to enforce that law.  "Where Congress has in the statute given [an agency] a question to answer, the courts will give respect to that answer; but they must be sure the question has been asked." *NLRB v. Ins. Agents' Int'l Union,* 361 U.S. 477, 499 (1960).  Congress did not ask the question in the FLSA concerning property rights in tips, or regarding the extension of the tip credit provision to employers who do not take a tip credit.[7]  Nor would Congress ask such questions under the FLSA, or delegate authority to DOL to address them.[8]  Thus, the 2011 Final Rule must be declared invalid as beyond the scope of DOL's authority.  *See, e.g.*, *Michigan*, 268 F.3d at 1085.

## III.    THE 2011 FINAL RULE IS INVALID UNDER STEP TWO OF *CHEVRON* BECAUSE IT CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION

If the Court were to conclude both that (1) the 2011 Final Rule does not fail under step one of *Chevron* and (2) under the *Mead* analysis Congress (a) delegated authority to DOL to regulate under section 3(m) and (b) DOL acted in the exercise of that delegation, then the analysis moves to step two of *Chevron*.  *Wilcox*, 633 F.3d at 772-73 ("Under step two, we must determine if the agency's interpretation of the statute is 'a reasonable policy choice for the agency to make.'"  (citing *Brand X*, 545 U.S. at 986 (quoting *Chevron*, 467 U.S. at 845)).  *See*

---

[7]    In a similar vein, section 3(m) does not discuss property rights in housing, despite the fact that the provision includes "board, lodging and other facilities" in its definition of "wage."  Such silence, however, certainly does not mean that Congress has asked a question about property rights in housing; nor does it give DOL the right or authority to issue regulations defining or granting employees a property interest in housing provided by employers.

[8]    Perhaps realizing this fatal flaw to the Final Rule, DOL frames the issue as whether "*employers should be permitted to utilize their employees' tips to subsidize their minimum wage obligation without taking a tip credit*".  *See* Defs.' Mem. in Supp. of Mot. to Dismiss at 13 (emphasis added).  This, however, is an issue completely unrelated to the one before this Court, given that Plaintiffs do *not* in any sense use tips to subsidize minimum wage payments and already pay their employees full minimum wage.  This distinction is critical, as reflected in the Ninth Circuit's decision in *Woody Woo*.

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                    20

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

*also Atl. City Elec. Co. v. Mead*, 295 F.3d 1, 8-9 (D.C. Cir. 2002) (applying a similar *Chevron / Mead* approach).

The APA grants jurisdiction to a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). To make this finding, the court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Watkins v. United States Bureau of Customs,* 643 F.3d 1189, 1198 (9th Cir. 2011). Where, as here, the agency has not considered relevant aspects of the problem, has offered an explanation for its decision that runs counter to the evidence before the agency and is so implausible that it could not be the product of agency expertise, the agency's action should be set aside as arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). *See also Pac. Rivers Council v. United States Forest Serv.,* No. 08-17565, 2012 U.S. App. LEXIS 12553, at *18 (9th Cir. June 20, 2012) (The Ninth Circuit "will reverse a decision as arbitrary and capricious only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.") (internal quotation marks omitted).

## A.    DOL Failed To Consider The Effects Of The 2011 Final Rule On Small Businesses

Congress enacted the Regulatory Flexibility Act ("RFA"), 5 U.S.C. §§ 601-612, to require agencies to consider the potential impact of their regulations on small businesses such as the Plaintiff restaurant and the Plaintiff Associations' members in this case. In enacting the RFA, Congress expressly recognized that agency rules frequently have a disproportionate adverse impact on small businesses. *See* RFA, Pub. L. No. 96-354, 94 Stat. 1164, § 2 (1980). For example, these entities face practical difficulties in complying with federal rules that differ

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                                    21

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

significantly from those encountered by their larger counterparts -- including that costs of complying cannot be as easily absorbed or spread by small entities as they can be larger entities. In light of this disparity, the RFA requires agencies "to solicit and consider flexible regulatory proposals and to explain the rationale for their actions to assure that such proposals are given serious consideration."  *Id.*  As part of the rulemaking process, agencies are required to conduct initial and then final regulatory analyses to ascertain the economic impact that a proposed regulation will have on small entities, to set out the less onerous alternatives considered by the agency, and to discuss the agency's rationale for declining to adopt these less costly alternatives. *See* 5 U.S.C. §§ 603-604.

DOL failed to conduct a proper regulatory flexibility analysis for both its proposed and final rules.[9]  In the 2008 NPRM, DOL declared that its proposed rules "would not have a significant economic impact on a substantial number of small entities" and, therefore, "the Department need not prepare an initial flexibility analysis under the [RFA]."  73 Fed. Reg. at 43,665.  DOL explained that it had "determined that the proposed changes will not result in any additional compliance costs for regulated entities because the current compliance obligations derive from current law and not the outdated regulatory provisions that have been superseded years ago." *Id.* at 43,662.  Thus, according to DOL, "the proposed changes will not result in any additional compliance costs for regulated entities," *id.*, and "the impacts resulting from the promulgation of the proposed regulations are not likely to be measurable."  *Id.* at 43,663. Similarly, in its 2011 Final Rule, DOL concluded that "because the final rule will not impose

---

[9]    Plaintiffs do not dispute Defendants' contention that they technically complied with the RFA's procedural requirements by certifying that small businesses would not be harmed by the 2011 Regulations.  *See* Def. Memo in Support of Motion at 20-21.  Plaintiffs' RFA analysis is simply to show one of the many ways in which DOL acted arbitrarily and capriciously when it implemented the 2011 Final Rule.  *See, e.g., S. Offshore Fishing Ass'n v. Daley,* 995 F. Supp. 1411 (M.D. Fla. 1998) (granting summary judgment for plaintiff because Department of Commerce failed to comply with the RFA and analyze impact on small business in an arbitrary effort that partook "of an artifice to feign good faith, statutory compliance").  *See also Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43 (an administrative action is arbitrary and capricious if the agency has failed to consider relevant factors).

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                                   22

Jackson Lewis LLP
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

any measurable costs on employers, both large and small entities, the Department has determined that it would not have a significant economic impact on a substantial number of small entities within the meaning of the [RFA]" and, as a result, DOL did not prepare a regulatory flexibility analysis. 76 Fed. Reg. at 18,853. In support, DOL made conclusory statements similar to those made in the NPRM. *See id.* at 18,851 ("The Department has determined that the final rule changes will not result in any additional compliance costs for regulated entities because the current compliance obligations derive from current law and not the outdated regulatory provisions that have been superseded years ago.").

For DOL to determine that the 2011 Final Rule "would not have a significant economic impact on a substantial number of small entities" without any actual consideration of the impact of the amendments relating to tip pools and ownership of tips is incredulous. Indeed, contrary to DOL's assertions, the pertinent portions of the 2011 Final Rule did not "derive from current law." Instead, they are completely at odds with the law that was in effect at that time and completely at odds with *Woody Woo*. Therefore, the 2011 Final Rule would, in fact, result in substantial "additional compliance costs for regulated entities" as it would affect every employer administering a mandatory tip pool confirmed as lawful by *Woody Woo* but purported to be unlawful by the 2011 Final Rule. One impact would be such "soft" costs as diminished employee morale and productivity, particularly of those employees who would need to be excluded from the tip pool. Another impact would be "hard" costs as lost revenue by customers whose service may be negatively impacted by such a change, and lost revenue by increasing the wages of the employees who will now lose the benefit of the tips that have been shared with them.

Furthermore, a substantial majority of full-service restaurants who would be directly affected by the 2011 Final Rule are considered small businesses, as defined by the U.S. Small Business Administration, with annual sales under $7 million. *See* Compl. ¶ 98 (citing the *2007 Economic Census*, U.S. Bureau of the Census). Almost half (46%) of all full-service restaurants

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                           23

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

have under $500,000 in gross annual income, and the majority (85%) of all full-service restaurants have fewer than 50 employees. *Id.* Thus, the 2011 Final Rule would, in fact, have a significant economic impact on a substantial number of small entities.

The importance that Congress places on considering the impact of the FLSA on small businesses is clear. When the FLSA was amended in 1966 to include most restaurants, hotels and motels within the scope of its coverage for the first time, Congress was so concerned about the effects on small businesses that it provided the "tip credit" provision to "ease the impact" on these businesses. S. Rep. No. 95-440, at 26 (1977). When Congress considered the repeal of the tip credit in 1974, it determined that doing so would impose too great an immediate burden on affected industries, when coupled with the other amendments to the FLSA at that time. S. Rep. No. 95-440, at 26 (1977).

DOL's refusal to recognize, much less consider, the impact of the 2011 Final Rule at issue here on small businesses shows that DOL acted in an arbitrary and capricious manner in promulgating the rule.

**B.      DOL Arbitrarily Chose To "Protect" Certain Employees While Disadvantaging Others**

DOL is clearly acting in a manner to try to protect the interests of servers and other tipped employees. They are doing so, however, not only at the expense of the businesses employing those tipped employees, but also at the expense of the tipped employees' co-workers such as the cooks and dishwashers who may otherwise share in the benefit of tips per a mandatory tip pool (assuming the employer does not take a tip credit).

Those co-workers who DOL would argue are not "customarily and regularly tipped" typically make far less than servers. *See* Compl. ¶ 41 *et seq.* This is so even where employers are able to take a tip credit and, if they choose, to pay their servers only $2.13 per hour. This pay disparity becomes even more pronounced in jurisdictions such as Washington and Oregon, where the minimum wage currently is $9.04 and $8.80 per hour respectively and employers are

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                                    24

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

unable to take a tip credit.  This is exemplified by comparing the pay of employees at Plaintiff Davis Street Tavern:  back-of-house employees receive, on average, approximately $1.25 per hour in tips from a tip pool, resulting in average pay to a line cook—$13.75 per hour; prep cook—$11.25 per hour; and dishwasher—$10.25 per hour.  *Id.* ¶ 45.  By way of comparison, the following positions receive the following average amounts in tips from the tip pool:  servers and bartenders:  $20.00 per hour (bringing their average hourly income to $28.80 per hour), bussers: $10.00 per hour (bringing their average hourly income to $18.80 per hour), hosts:  $4.00 per hour (bringing their average hourly income to $14.00 per hour).  *Id.* ¶ 46.

Thus, DOL's arbitrary decision to protect the interests of some employees (beyond the protections already provided by the FLSA), at the expense of others, not only violates the FLSA's plain language, but also its intent.  *See, e.g.*, *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (The "FLSA was designed to give specific minimum protections to *individual* workers and to ensure that *each* employee covered by the Act would receive '[a] fair day's pay for a fair day's work' . . . ." (citations omitted)).

Moreover, as evidenced by the fact that a server has joined this lawsuit against DOL and her assertions made in the Complaint, DOL's "help" is not welcome by all tipped employees and, in fact, is perceived to do more harm to them than good.  While different tipped employees' views on this may differ, that is not the issue.  Rather, the issue is that DOL did not take all appropriate factors into account in promulgating the 2011 Final Rule, and then arbitrarily drew a line in the sand concerning who has a property interest in tips left by customers and should consequently be entitled to share in them, irrespective of whether the employer takes a tip credit.

DOL is not the appropriate entity to make these judgment calls (nor does it have the authority to do so), and these varying perspectives between tipped employees and others is exactly why it should be left to the employers and their employees to negotiate and enter into agreements concerning how to handle tips – particularly when that employer does not take a tip credit. "[P]arties should be free to negotiate those terms without government interference as long

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                        25

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

as the agreed upon terms do not violate the minimum wage/maximum hour requirements of the FLSA." *Monahan v. Cnty. of Chesterfield, Va.*, 95 F.3d 1263, 1280 (4th Cir. 1996); *cf. Woody Woo*, 596 F.3d at 579 ("'In businesses where tipping is customary, the tips, *in the absence of an explicit contrary understanding*, belong to the recipient. Where, however, [such] an arrangement is made . . . , *in the absence of statutory interference, no reason is perceived for its invalidity*.'" (alterations in original) (quoting *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 397 (1942)). DOL asserts that this is not of concern because "[t]here is nothing in the challenged rule that prevents tipped employees from deciding to share their own tips with employees who do not customarily and regularly receive tips." Defs.' Mem. in Supp. of Mot. to Dismiss at 22. DOL misses the point: their regulations unlawfully impair the ability of employers and their employees to negotiate and to agree on the issue of tip distribution when the employer chooses to not take the tip credit and pay employees the full minimum wage.[10]

DOL's failure to consider these issues is further evidence of the arbitrary and capricious nature in which DOL promulgated the 2011 Final Rule.

## IV. DOL WAS REQUIRED TO ISSUE A NEW NOTICE OF PROPOSED RULEMAKING BEFORE PROMULGATING THE 2011 FINAL RULE

Even if the 2011 Final Rule survives the substantive challenges discussed above, it still must be struck down because DOL failed to meet the APA's procedural requirements in promulgating the Rule. The APA requires that an agency publish a notice of proposed rulemaking, including "either the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b)(3). Courts have "generally interpreted this to mean that the final rule the agency adopts must be a logical outgrowth of the rule proposed."

---

[10] Thus, contrary to DOL's assertion, the 2011 Final Rule does "impose limitations on private property use." 76 Fed. Reg. at 18,854. In addition to imposing limits on the ability to freely enter into contracts, the 2011 Final Rule declares tips as "property" and then takes that property from back-of-house (and other traditionally non-tipped employees) who, up until the Final Rule, could be included in a tip pool (again, assuming the employer does not take a tip credit and pays the employees at least full federal minimum wage).

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                                    26

Jackson Lewis LLP
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon 97204
503.229.0404

*Coke*, 551 U.S. at 174 .  Conversely, the APA prohibits an agency from adopting final rules that differ from its proposed rules "when the changes are so major that the original notice did not adequately frame the subjects for discussion." *Conn. Light & Power Co. v. NRC*, 673 F.2d 525, 533 (D.C. Cir. 1982).  The 2011 Final Rule violates this requirement.

Defendants erroneously contend that the tip pool requirements contained in the 2011 Final Rule represent a "logical outgrowth" of the proposal contained in the 2008 NPRM.  To the contrary, the 2011 Final Rule deviates so greatly from the 2008 NPRM that it failed to appropriately frame the subjects for public consideration and discussion.

A final rule is a "logical outgrowth" of a proposed rule only if interested parties "'should have anticipated' that the change made in the final rule was possible, and thus reasonably should have filed their comments on the subject during the notice-and-comment period".  *NE Md. Waste Disposal Auth. v. EPA*, 358 F.3d 936, 952 (D.C. Cir. 2004) (quoting *City of Waukesha v. EPA*, 320 F.3d 228, 245 (D.C. Cir. 2003)).  The "logical outgrowth" doctrine does not extend to a final rule that finds no roots in the agency's proposal because "something is not a logical outgrowth of nothing," nor does it apply where interested parties would have had to "divine [the agency's] unspoken thoughts," because the final rule was "surprisingly distant" from the agency's proposal.  *Envtl. Integrity Project v. EPA,* 425 F.3d 992 (U.S. App. D.C., 2005) at 996 (citing *Kooritzky v. Reich,* 17 F.3d 1509, 1513 (D.C. Cir. 1994); *Ariz. Pub. Serv. Co. v. EPA,* 211 F.3d 1280, 1299 (D.C. Cir. 2000); *Int'l Union, United Mine Workers of Am. v. MSHA,* 407 F.3d 1250, 1260 (D.C. Cir. 2005)).  Thus, the essential inquiry "focuses on whether interested parties reasonably could have anticipated the final rulemaking from the draft [rule]." *Fertilizer Inst. v. EPA*, 935 F.2d 1303, 1311 (D.D.C. 1991) (citations omitted).  Here, Defendants cannot make this showing.

The 2008 NPRM did not put the public on notice that DOL was going to declare an absolute property right in tips or declare that section 3(m)'s limit on tip pools would apply even to employers who do not take a tip credit and who pay their employees at least the federal

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                                        27

Jackson Lewis LLP
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

minimum wage.  Rather, in the 2008 NPRM, in discussing the changes to the regulations regarding the tip credit, DOL explained  that "Section 3(m) of the FLSA . . . *includes conditions for taking tip credits*" and that the 1974 amendments to the FLSA "provid[ed] that *an employer could not take a tip credit unless* . . . 'all tips received by such employees have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.'"  73 Fed. Reg. at 43,659 (emphasis added) (citations omitted).

> In further discussing the tip credit provision of section 3(m), DOL explained:

> Section 3(m) provides the only method by which an employer may use tips received by an employee **to satisfy the employer's minimum wage obligation**. An employer's only options under section 3(m) are to take a credit against the employee's tips of up to the statutory differential, or to pay the entire minimum wage directly . . . .  The proposed rule updates the regulations to. . .**clarify that the availability of the tip credit provided by section 3(m)** requires that all tips received must be paid out to tipped employees in accordance with the 1974 amendments.

*Id.* at 43,659-60 (emphasis added).

As is clear from the foregoing passages, the 2008 NPRM put the public on notice that DOL interpreted section 3(m) as placing a condition on an employer's use of the tip credit and that it intended to update the relevant regulations to clarify that employers could not use employees' tips to pay an employees' minimum wage in excess of the federal tip credit limit. This is far different from asserting an absolute property right in tips and from stating that section 3(m) applies even when an employer pays its employees full minimum wage and does not take a tip credit.

As further evidence of the substantial difference between the 2008 NPRM and the 2011 Final Rule, the Final Rule extensively discusses one of the principal reasons for its changes from the 2008 NPRM: DOL's belief "that *Woody Woo* was incorrectly decided" and that its "'plain meaning' construction is unsupportable."  76 Fed. Reg. at 18,841, 18,842.  As *Woody Woo* was

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU                              28

Jackson Lewis LLP
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

decided well after the 2008 NPRM, there is simply no way employers could have been on notice by the NPRM of DOL's desire to challenge that ruling.

By promulgating a regulation that entirely contradicts the proposal contained in the 2008 NPRM, Defendants have violated the notice and comment requirements of the APA "that a reasonable commenter must be able to trust an agency's representations about which particular aspects of its proposal are open for consideration." *Envtl. Integrity Project,* 425 F.3d at 998, *citing Fertilizer Inst. v. EPA,* 935 F.2d 1303, 1312 (D.C. Cir. 1991). To disregard this safeguard allows DOL simply to "justify any final rule it might be able to devise by whimsically picking and choosing within the four corners of a lengthy 'notice.'" *Id.*

By not being given proper notice of DOL's intent to declare an absolute property right in tips and to rule that federal tip pooling laws apply even to employers who pay employees full minimum wage and do not take a tip credit, interested parties, including the Plaintiff Associations and their members, Davis Street Tavern, similar restaurants, and affected employees were never offered the opportunity to meaningfully comment on these issues and now are substantially harmed by DOL's publication and intent to enforce its 2011 Regulations. Such disregard warrants summary judgment for Plaintiffs and vacating the 2011 Final Rule with respect to tip pools.

**Pls.' Mem. in Supp. of Cross-Mot. for Summ. J. & Opp. to Defs.' Mot. to Dismiss**
Case No. 3:12-cv-01261-HU                                29

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404

**CONCLUSION**

For these reasons, Plaintiffs' Motion for Summary Judgment should be granted, and Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

/s/ Paul DeCamp
Paul DeCamp

**William Robert Donovan, Jr., WSBA #44571 (pro hac vice)**
robert.donovan@jacksonlewis.com
**Peter Nohle, WSBA#35849 (pro hac vice)**
nohlep@jacksonlewis.com
**Nick M. Beermann, WSBA #308603 (pro hac vice)**
beermann@jacksonlewis.com
Jackson Lewis LLP
600 University Street, Suite 2900
Seattle, Washington  98101
(206) 405-0404
(206) 405-4450 (facsimile)

**Scott Oborne, OSB #062333**
obornes@jacksonlewis.com
Jackson Lewis LLP
1001 SW Fifth Avenue, Suite1205
Portland, Oregon  97204
(503) 229-0404
(503) 229-0405 (facsimile)

**Paul DeCamp, VBA #76204 (pro hac vice)**
DeCampP@jacksonlewis.com
Jackson Lewis LLP
10701 Parkridge Boulevard, Suite 300
Reston, Virginia  20191
(703) 483-8300
(703) 483-8301 (facsimile)

**Attorneys for Plaintiffs**

November 16, 2012

**CERTIFICATE OF COMPLIANCE**

This Memorandum complies with the applicable word-count limitation under LR 7-2(b) because, while it contains approximately 11,235 words (including headings, footnotes and quotations, but excluding the caption, table of contents, table of authorities, signature block and any certificates of counsel), the parties were granted a 10 page extension of the page limitation on the opening and responsive briefs by the above-entitled Court in its Minute Order dated October 1, 2012. *See* Minute Order, Docket Item No. 24.

/s/ Paul DeCamp
Paul DeCamp

Pls.' Mem. in Supp. of Cross-Mot. for Summ. J.
& Opp. to Defs.' Mot. to Dismiss
Case No. 3:12-cv-01261-HU

30

**Jackson Lewis LLP**
1001 SW Fifth Avenue, Suite 1205
Portland, Oregon  97204
503.229.0404