IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**OREGON RESTAURANT AND LODGING, et al.,**

               Plaintiffs,

   v.

**HILDA L. SOLIS, et al.,**

               Defendants.

No. 3:12-cv-01261-MO

OPINION AND ORDER

**MOSMAN, J.**,

      Tip pooling is the practice of collecting all tips from tipped employees so that they can be redistributed among a group. Until recently, employers could contract with their tipped employees to include non-tipped employees in the tip pool. This allowed employers to set up employment arrangements that incentivized and rewarded the whole line of service, including employees, like cooks and dishwashers, who were not customarily or regularly tipped.

      In 2011, the Department of Labor ("DOL") issued regulations that target the use of tips by the employers of tipped employees. The new regulations prohibit employers from contracting with their tipped employees to include non-tipped employees in the tip pool. The central question

1 – OPINION AND ORDER

before the Court is whether these regulations are valid under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and its progeny. Because I find that Congress has directly spoken to the precise question at issue, defendants' motion for summary judgment [25] is DENIED and plaintiffs' cross-motion for summary judgment [26] is GRANTED.

## BACKGROUND

I.    **The Fair Labor Standards Act**

The Fair Labor Standards Act ("FLSA") was enacted "to protect all covered workers form substandard wages and oppressive working hours." *Barrentine v. Ark.-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981). Under the FLSA, employers must pay their employees a minimum wage. *See* 29 U.S.C. § 206(a) ("Section 6(a)"). The FLSA's definition of the term "wage," in turn, recognizes that under certain circumstances, an employer of tipped employees may credit a portion of its employees' tips against its minimum wage obligation, a practice commonly referred to as taking a "tip credit." *See id.* § 203(m) ("Section 3(m)"). Section 3(m) provides in relevant part:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

2 – OPINION AND ORDER

*Id.*

Each sentence of Section 3(m) contributes an essential piece to its overall meaning. The first sentence requires an employer to pay a tipped employee an amount equal to (1) a cash wage of at least $2.13,[1] plus (2) an additional amount in tips equal to the federal minimum wage minus such cash wage.[2] The second sentence clarifies that the difference between the federal minimum wage and the cash wage may not be greater than the value of tips actually received. Therefore, if the cash wage plus the value of tips actually received does not meet the federal minimum wage, the employer must supplement the cash wage. The third sentence states that the preceding two sentences shall not apply—i.e., the employer may not take a tip credit—unless two conditions are satisfied: (1) the employer must inform the employee of the tip-credit provisions of Section 3(m), and (2) the employee must be allowed to retain all tips, except where the employee participates in a tip pool with other customarily and regularly tipped employees. *See Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 579–80 (9th Cir. 2010)

## II. ***Woody Woo***

In *Cumbie v. Woody Woo, Inc.*, the Ninth Circuit carefully analyzed Section 3(m) and found that it was plain and clear. The question presented in *Woody Woo* was whether a restaurant violated the FLSA when, despite paying a cash wage above the minimum wage, it required its wait staff to participate in a tip pool that redistributed a portion of their tips to the kitchen staff. *Id.* at 578. The district court dismissed the plaintiff's suit based on the plain meaning of Section 3(m), and the Ninth Circuit affirmed the district court on appeal.

The Court began its analysis by underscoring an important background principle: "In business where tipping is customary, the tips, in the absence of an explicit contrary

[1] *See* 29 U.S.C. §§ 203(m), 206(a)(1) (1996).
[2] *See* 29 U.S.C. § 206(a)(1).

3 – OPINION AND ORDER

understanding, belong to the recipient. Where, however, [such] an arrangement is made . . . , in the absence of statutory interference, no reason is perceived for its invalidity." *Id*. at 579 (quoting *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 397 (1942) (internal citations omitted)).

The Court then rejected the plaintiff's argument that "an employee must be allowed to retain all of her tips—except in the case of a 'valid' tip pool involving only customarily tipped employees—regardless of whether her employer claims a tip credit." *Id*. at 580. "[W]e cannot reconcile this interpretation with the plain text of the third sentence, which imposes *conditions* on taking a tip credit and does not state freestanding *requirements* pertaining to all tipped employees." *Id*. 581 (emphasis in original). As the Court observed, "[a] statute that provides that a person must do *X in order to achieve Y* does not mandate that a person must do *X*, period" *Id*. (emphasis in original).

The Court found support for its holding in the text of Section 3(m) for two additional reasons. First, "[i]f Congress wanted to articulate a general principle that tips are the property of the employee absent a 'valid' tip pool, it could have done so without reference to the tip credit." *Id*. Second, noting the obligation to give effect, if possible, to every clause and word of a statute, the Court "decline[d] to read the third sentence in such a way as to render its reference to the tip credit, as well as its conditional language and structure, superfluous." *Id*. For these reasons, the Court refused to "resort to legislative history to cloud [the] statutory text." *Id*. at 581 n.11 (quoting *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994)).

## III.    **The Challenged Regulations**

In 1974, Congress passed amendments to the FLSA, including a substantive amendment to Section 3(m). At that time, Congress also granted the Secretary of Labor the authority "to

prescribe necessary rules, regulations, and orders" to implement the 1974 amendments. Pub. L. No. 93-259, § 29(b), 88 Stat. 55, 76 (1974).

Section 3(m) has remained essentially unchanged since 1974, and for several decades, the Secretary of Labor did not initiate any rulemakings with regard to the tip credit. That period of inactivity ended in 2008, when the DOL issued a Notice of Proposed Rulemaking, proposing changes to several DOL regulations that interpret the FLSA. *See* 73 Fed. Reg. 43,654 (July 28, 2008) (the "2008 NPR"). The purpose of the proposed rule was to update the regulations to incorporate amendments to the FLSA, the legislative history, subsequent court decisions, and the DOL's interpretations. *Id*. at 43,654, 43,659. In discussing the changes to Section 3(m), the DOL explained that:

> Section 3(m) provides the only method by which an employer may use tips received by an employee to satisfy the employer's minimum wage obligation. An employer's only options under section 3(m) are to take a credit against the employee's tips of up to the statutory differential, or to pay the entire minimum wage directly. . . .
> . . .
> The proposed rule updates the regulations to incorporate the 1974 amendments, the legislative history, subsequent court decisions, and the Department's interpretations. Sections 531.52, 531.55(a), 531.55(b), and 531.59 eliminate references to employment agreements providing either that tips are the property of the employer or that employees will turn tips over to their employers, and clarify that the availability of the tip credit provided by section 3(m) requires that all tips received must be paid out to tipped employees in accordance with the 1974 amendments.

*Id*. at 43,659–60. To that end, the proposed rule stated in relevant part that

> Where an employee is being paid wages no more than the minimum wage, the employer is prohibited from using an employee's tips for any reason other than to make up the difference between the required cash wage paid and the minimum wage or in furtherance of a valid tip pool.

*Id*. at 43,667.

On April 5, 2011, the DOL issued new regulations based on the 2008 NPR. *See* 76 Fed. Reg. 18,832 (Apr. 5, 2011). The preamble to these regulations addresses the Ninth Circuit's opinion in *Woody Woo*, which was decided after the publication of the 2008 NPR but before the publication of the final regulations. The DOL stated that it "respectfully believe[d] that *Woody Woo* was incorrectly decided" and that "[t]he Ninth Circuit's 'plain meaning' construction [was] unsupportable." *Id*. at 18,841–42. The DOL also staked out its current position: "The fact that section 3(m) does not expressly address the use of an employee's tips when a tip credit is not taken leaves a 'gap' in the statutory scheme, which the Department has reasonably filled through its longstanding interpretation of section 3(m)." *Id*. at 18,841.

Accordingly, the new regulations purport to "make clear that tips are the property of the employee, and that section 3(m) sets forth the only permitted uses of an employee's tips—either through a tip credit or a valid tip pool—whether or not the employer has elected the tip credit." *Id*. at 18,842. Specifically, the new regulations made three relevant changes. First, the DOL replaced this language:

> In the absence of an agreement to the contrary between the recipient and a third party, a tip becomes the property of the person in recognition of whose service it is presented by the customer.

with the following language:

> Tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA. The employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool.

*Compare* 32 Fed. Reg. 13,575, 13,580 (1967) *with* 29 C.F.R. § 531.52. Second, the DOL added the following language to § 531.54:

> [V]alid mandatory tip pools . . . can only include those employees who customarily and regularly receive tips. However, an employer . . . may not retain any of the employees' tips for any other purpose.

*Compare* 32 Fed. Reg. 13,575, 13,580 (1967) *with* 29 C.F.R. § 531.54. Third, the DOL replaced this language:

> Under employment agreements requiring tips to be turned over or credited to the employer to be treated by him as part of his gross receipts, it is clear from the legislative history that the employer must pay the employee the full minimum hourly wage, since for all practical purposes the employee is not receiving tip income.

with the following language:

> With the exception of tips contributed to a valid tip pool as described in § 531.54, the tip credit provisions of section 3(m) also require employers to permit employees to retain all tips received by the employee.

*Compare* 32 Fed. Reg. 13,575, 13,581 (1967) *with* 29 C.F.R. § 531.59. These changes are the subject of plaintiffs' challenge in this lawsuit.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In challenges to final agency action, however, the court does not employ the usual summary judgment standard for determining whether a genuine issue of material fact exists. The reason for this variance is that the court does not generally resolve facts in reviewing final agency action. *See Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985). Instead, "the function of the district court [at summary judgment] is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id*. at 769.

## ANALYSIS

Under the canonical formulation of *Chevron*, a court must adopt an agency's interpretation of a statute it administers if Congress has not directly spoken "to the precise

question at issue" and if the "agency's answer is based on a permissible construction of the statute." 467 U.S. 837, 842–43. Here, the parties raise the three classic *Chevron* questions: First, whether the DOL was authorized to issue the challenged regulations; second, whether Congress has directly spoken to the precise question at issue; and third, whether the DOL's answer is based on a permissible construction of the FLSA.

## I.    <u>Authority to Regulate</u>

Not every agency interpretation is entitled to *Chevron* deference. At *Chevron* Step Zero, the court applies *Chevron* deference only when (1) "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law," and (2) "the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001).

Despite the frequency with which courts cite *Mead*, it was unclear until recently whether a court must defer under *Chevron* to an agency's interpretation of a statutory ambiguity that concerns the scope of the agency's statutory authority. The Supreme Court has now answered that question in the affirmative. *See City of Arlington v. FCC*, No. 11-1545, 569 U.S. __, 2013 WL 2149789, slip op. at *5 (May 20, 2013). As the Court held in *City of Arlington*, "[n]o matter how it is framed, the question a court faces when confronted with an agency's interpretation of a statute it administers is always, simply, *whether the agency has stayed within the bounds of its statutory authority*." *Id.* (emphasis in original).

In the briefing and at oral argument, the parties presented thoughtful arguments as to whether Congress delegated authority to the DOL to regulate the particular question before the Court. In light of *City of Arlington*, that inquiry now appears to be much more direct. In 1974, Congress granted the Secretary of Labor the authority "to prescribe necessary rules, regulations,

and orders with regard to the [1974] amendments," which included an amendment to Section 3(m). Pub. L. No. 93-259, § 29(b), 88 Stat. 55, 76. This is a general conferral of rulemaking authority, and as the Supreme Court has cautioned, there has not yet been "a single case in which a general conferral of rulemaking or adjudicative authority has been held insufficient to support *Chevron* deference for an exercise of that authority within the agency's substantive field." *City of Arlington*, 2013 WL 2149789, at *10. This will not be the first case to so find. Here, the DOL exercised a general conferral of rulemaking authority within its substantive field. I therefore proceed to *Chevron* Step One.

## II.    *Chevron* Step One: The Precise Question at Issue

At *Chevron* Step One, the court asks "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43.

### A.    *The* Brand X *Standard*

Fortuitously, the Ninth Circuit has already pored over the text of Section 3(m) to discern Congressional intent on the very question presented here. In *Woody Woo*, the plaintiff argued that under Section 3(m), "an employee must be allowed to retain all of her tips—except in the case of a 'valid' tip pool involving only customarily tipped employees—regardless of whether her employer claims a tip credit."[3] 596 F.3d at 580. The Ninth Circuit disagreed.

In rejecting the plaintiff's argument, the Court emphasized Section 3(m)'s "clear" and "plain" language at least four times. First, the Court held that "the plain text of the third sentence . . . imposes *conditions* on taking a tip credit and does not state freestanding *requirements*

---

[3] This was also the DOL's argument as an amicus curiae at that time, and it remains the DOL's argument today.

pertaining to all tipped employees. A statute that provides that a person must do *X in order to achieve Y* does not mandate that a person must do *X*, period." *Id*. at 581 (emphasis in original). Second, responding to plaintiff's legislative history arguments, the Court noted that it "do[es] not resort to legislative history to cloud a statutory text that is clear." *Id*. at 581 n.11. Third, the Court "conclude[d] that the meaning of the FLSA's tip credit provision is clear." *Id*. at 579 n.6. Fourth, detecting no "ambiguity or . . . irreconcilable conflict with another statutory provision," the Court refused to "'alter the text [of Section 3(m)] in order to satisfy the policy preferences' of Cumbie and [the DOL]." *Id*. at 583 (quoting *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 462 (2002)).

The fact that the Ninth Circuit has previously interpreted Section 3(m) does not end my inquiry, however. "A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

Here, the DOL argues that *Woody Woo* does not satisfy the *Brand X* standard for two reasons. First, the DOL argues that *Woody Woo* cannot satisfy *Brand X* because the new regulations were promulgated two years after the Ninth Circuit's decision. (Defs.' Mem. [25] at 13.) Apparently, the DOL believes that this sequence of constructions is atypical for a *Brand X* case. It is not.

Second, the DOL argues that under *Woody Woo*, Section 3(m) applies only to employers who take a tip credit. According to the DOL, both *Woody Woo* and Section 3(m) are silent with regard to employers who do not take a tip credit. Therefore, *Woody Woo* does not control my

analysis, Section 3(m) is ambiguous regarding employers who do not take a tip credit, and the new regulations are entitled to *Chevron* deference. (Defs.' Reply [29] at 5–9.)

I cannot agree. *Woody Woo* squarely addressed the question of whether Congress intended to limit the use of tips by the employers of tipped employees when no tip credit is taken. The Court was presented with the very argument made by the DOL in this action, "that under section 203(m), an employee must be allowed to retain all of her tips—except in the case of a 'valid' tip pool involving only customarily tipped employees—regardless of whether her employer claims a tip credit." *Woody Woo*, 596 F.3d at 580. And the Court didn't buy it. Rather, based on the clear and unambiguous text of the statute, the Court found that Congress intended *only* to limit the use of tips by employers when a tip credit is taken. *Id*. at 580–83. This is not silence. This is repudiation. Therefore, I find that *Woody Woo* leaves no room for agency discretion here.

### B.      *The Text of Section 3(m)*

Even were I free to disregard *Woody Woo*, which I am not, I would reach the same conclusion regarding Congressional intent on the precise question at issue. The text of Section 3(m) is clear and unambiguous: It imposes conditions on employers that take a tip credit but does not impose a freestanding requirement pertaining to all tipped employees. "A statute that provides that a person must do *X in order to achieve Y* does not mandate that a person must do *X*, period." *Id*. at 581 (emphasis in original).

Moreover, "[i]f Congress wanted to articulate a general principle that tips are the property of the employee absent a 'valid' tip pool, it could have done so without reference to the tip credit." *Id*. This assumption is reinforced by the fact that when Congress enacted the 1974 amendments, it understood that the Supreme Court had already held that private agreements

between employers and employees with regard to the allocation of tips were lawful. *See*

*Jacksonville Terminal*, 315 U.S. at 397.

Finally, I decline to read Section 3(m) "in such a way as to render its reference to the tip

credit, as well as its conditional language and structure, superfluous." *Woody Woo*, 596 F.3d at

581. The third sentence of Section 3(m) states that if an employer takes a tip credit, the employee

must be allowed to retain all her tips, except where she participates in a "valid" tip pool. There

would be no need to make such a statement if Congress intended that an employee always retain

her tips.

### C.    *The Purpose and General Structure of the FLSA*

In addition to the text of Section 3(m), the purpose and general structure of the FLSA

suggest that Congress did not intend to limit an employer's use of tips when no tip credit is

taken. As previously noted, the FLSA was enacted "to protect all covered workers from

substandard wages and oppressive working hours." *Barrentine*, 450 U.S. at 739. To that end, the

FLSA includes specific statutory protections. *See* 29 U.S.C. §§ 206, 207, 211, 212. What is

more, the Supreme Court has made clear that an employment practice does not violate the FLSA

unless the FLSA *prohibits* it. *See Christensen v. Harris Cnty*, 529 U.S. 576, 588 (2000). The

FLSA is thus an Act of defined scope.

The most relevant statutory protection here is Section 6(a), which requires employers to

pay their employees at least the federal minimum wage. *See* 29 U.S.C. § 206. Section 3(m)

defines the term "wage" under the FLSA and allows for certain credits to meet the minimum

wage rate specified in Section 6(a)(1). *See id*. § 203(m). The relationship between these

provisions implies that Congress has given employers a choice: either pay the full minimum

wage free and clear of any conditions, or take a tip credit and comply with the conditions

imposed by Section 3(m). Under either scenario, the employee's right to the federal minimum wage is protected and the purposes of the FLSA are fulfilled.

The new regulations prohibit the use of tips by an employer even when the employer does not take a tip credit—i.e., even when the employer pays at least the full minimum wage. In so doing, the new regulations do not protect covered workers from substandard wages or oppressive working hours, nor do they vindicate any of the FLSA's specific statutory protections. In light of the Supreme Court's holding that an employment practice does not violate the FLSA unless the FLSA actually prohibits it, *Christensen*, 529 U.S. at 588, I presume that Congress intended not to add a new statutory protection guaranteeing a tipped employee who receives the full minimum wage the additional right to retain all tips, except where she participates in a "valid" tip pool.

### D.    *Silence*

In large part, the DOL's argument hinges on silence. According to the DOL, Section 3(m) is silent regarding an employer's use of tips when no tip credit is taken. That is, the FLSA does not authorize the unfettered use of tips when no tip credit is taken, nor does it expressly prohibit the DOL from regulating tips under such circumstances. (Defs.' Reply [29] at 5–6.) Therefore, Congress has not directly spoken to the precise question at issue, and I need only ask whether the DOL's construction is reasonable. *See Chevron*, 467 U.S. at 843 ("[I]f the statute is *silent or ambiguous* with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.") (emphasis added).

*Chevron* and its progeny make clear that discerning Congressional intent is more nuanced than the DOL suggests. To express its intention that certain activities be left free from regulation, Congress need not lace the United States Code with the phrase, "You shall not pass!" Instead,

"[i]f a court, *employing traditional tools of statutory construction*, ascertains that Congress had

an intention on the precise question at issue, that intention is the law and must be given effect."

*Id*. at 843 n.9 (emphasis added). The interpretive problem, then, is "that of deciding whether, or

when, a particular statute in effect delegates to an agency the power to fill a gap, thereby

implicitly taking from a court the power to void a reasonable gap-filling interpretation." *United*

*States v. Home Concrete & Supply, LLC*, 132 S. Ct. 1836, 1843 (2012) (plurality opinion).

Gaps can be explicit or implicit. "If Congress has explicitly left a gap for the agency to

fill, there is an express delegation of authority to the agency to elucidate a specific provision of

the statute by regulation." *Chevron*, 467 U.S. at 843–44. For example, the Supreme Court found

an explicit gap in a section of the FLSA that included the phrase "as such terms are defined and

delimited by regulations of the Secretary [of Labor]." *Long Island Care at Home, Ltd. v. Coke*,

551 U.S. 158, 162 (2007) (quoting 29 U.S.C. § 213(a)(15)).

Similarly, if Congress has implicitly left a gap for the agency to fill, "a court may not

substitute its own construction of a statutory provision for a reasonable interpretation made by

the administrator of an agency." *Chevron*, 467 U.S. at 844. In *Chevron*, for example, the

Supreme Court found that Congress had left an implicit gap with the ambiguous term "stationary

source." *Id*. at 866. Significantly, the Court reached this conclusion only after employing the

tools of statutory construction.

Here, the DOL concedes that Section 3(m) contains no explicit gap. The $64,000

question, then, is whether the absence of language regarding an employer's use of tips when no

tip credit is taken amounts to an implicit gap left for the agency to fill or an area where Congress

intended free economic choice. For the DOL, silence is always an implicit gap to be filled by

regulation. The DOL's position seems to be that Congressional silence regarding an area of

economic activity is <u>never</u> a considered decision to let the economic actors make their own choices. In its view, the text of Section 3(m) is an afterthought. It does not matter that "section 3(m) applies only to those employers who take a tip credit toward their minimum wage obligation." (Defs.' Reply [29] at 5.) If Congress did not come out and say that the DOL cannot regulate an employer's use of tips when no tip credit is taken, that should be the end of my inquiry.

The Court's ability to discern Congressional intent is not so limited. Congressional silence often signifies unclear intent. But not here. Employing traditional tools of statutory construction, as I have done above, the intent of Congress in Section 3(m) is clear: Congress intended to impose conditions on employers that take a tip credit but did not intend to impose a freestanding requirement pertaining to all tipped employees.

\*     \*     \*

Based on my alternative findings that *Woody Woo* leaves no room for agency discretion and that the intent of Congress is clear, I conclude that the new regulations are invalid at *Chevron* Step One. As a result, I decline to reach plaintiffs' challenges under *Chevron* Step Two and 5 U.S.C. § 553(b).

## CONCLUSION

The DOL is concerned that "if there are no restrictions on an employer's use of its employees' tips when it does not utilize a tip credit, the employer can . . . mandate that employees turn over all of their tips and use those tips to pay the minimum wage or for any other purpose." 76 Fed. Reg. 18,832, 18,842; (Defs.' Mem. [25] at 15.) Although this is technically true, one suspects that most employers would find such business practices unwise. In an industry where tipping is the norm, employers who forced tipped employees to surrender all of their tips

would remove a major incentive for good service. Tipped employees' performance would deteriorate, customer satisfaction would decline, and the employers' profits would decrease. In any event, the court "will not alter the text [of a statute] in order to satisfy the policy preferences of the [Secretary of Labor]." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 462 (2002).

For the foregoing reasons, defendants' motion for summary judgment [25] is DENIED and plaintiffs' cross-motion for summary judgment [26] is GRANTED.

IT IS SO ORDERED.

DATED this __7th__ day of June, 2013.


/s/ Michael W. Mosman_____
MICHAEL W. MOSMAN
United States District Judge

16 – OPINION AND ORDER